**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**PRAIRIE VIEW HEALTHCARE, INC.,**

**Plaintiff,**

**v.**

**ROBERT F. KENNEDY, JR., in his official capacity as Secretary, United States Department of Health and Human Services, et al.,**

**Defendant.**

**Case No. 26-CV-2138-JAR-JBW**

## MEMORANDUM AND ORDER

Plaintiff Prairie View Healthcare, Inc. brings this action against Defendants Robert F. Kennedy, Jr., in his official capacity as Secretary of the United States Department of Health and Human Services ("the Secretary"), the United States Department of Health and Human Services ("the Department"), the Centers for Medicare and Medicaid Services ("CMS"), and CGS Administrators, LLC ("CGS"), challenging the revocation of its Medicare enrollment. Before the Court is Defendants' Motion to Dismiss (Doc. 14). The motion is fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court dismisses the case for lack of jurisdiction.

### I. Background

The following facts are alleged in Plaintiff's Complaint or provided in attachments to Defendant's motion.[1] Plaintiff is a hospice provider in Wyandotte County, Kansas. Since 2018, Plaintiff has been enrolled in the Medicare program.

[1] *Mounkes v. Conklin*, 922 F. Supp. 1501, 1505 (D. Kan. 1996) ("In deciding a Rule 12(b)(1) motion, the court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."); *see also In re Precedent Health Ctr. Operations, LLC*, 392 F. App'x 618, 620 (10th Cir. 2010)

In December 2021, CGS began reviewing Plaintiff's hospice claims through the Targeted Probe and Educate program. During the first review in 2021, CGS reviewed sixteen claims that resulted in sixteen claim denials.[2] During the second review in 2022, CGS reviewed twenty claims that resulted in eighteen denials.[3] During the third review in 2024, CGS reviewed twenty-two claims, resulting in twenty-two denials.[4]

On November 19, 2024, CMS—acting through CGS—issued a letter (1) revoking Plaintiff's Medicare enrollment and billing privileges, effective December 19, 2024; (2) imposing a ten-year re-enrollment bar, the maximum period permitted under regulations; and (3) placing Plaintiff on the CMS Preclusion List.[5] These actions were taken based on CMS's determination that Plaintiff had violated 42 C.F.R. 424.535(a)(8)(ii).[6] On December 31, 2024, Plaintiff timely sought reconsideration of the revocation, re-enrollment bar, and CMS Preclusion List placement (collectively, "the Determination"). But, on March 26, 2025, CMS upheld the Determination.[7]

Although not reflected in the Complaint,[8] it is uncontested that on June 11, 2025, Plaintiff requested an ALJ hearing that the Departmental Appeals Board ("DAB") docketed as No. C-25-

---

(considering evidence outside the complaint to conclude that it was "uncontested [that the plaintiff] . . . did not avail itself of available administrative remedies").

[2] Doc 1 ¶ 30.

[3] *Id.* ¶ 31.

[4] *Id.* ¶ 32.

[5] *Id.* ¶¶ 38–39

[6] *Id.* ¶ 38; *see* 42 C.F.R. 424.535(a)(8)(ii) (providing that revocation of a provider's or supplier's Medicare enrollment is proper if "CMS determines that the provider or supplier has a pattern or practice of submitting claims that fail to meet Medicare requirements").

[7] Doc. 1 ¶ 43; *see also* Doc. 14-3.

[8] Plaintiff's Complaint does not contain any factual allegations regarding the administrative review it sought. However, Plaintiff's opposition brief incorporates and does not contest the attachments to Defendant's brief. *See, e.g.*, Doc. 15 at 2–3 (citing Docs. 14-5, 14-6, & 14-7).

714.[9] However, before any hearing occurred, Plaintiff and CMS reached a settlement that reduced Plaintiff's re-enrollment bar from ten years to five years ("the Settlement").[10] On August 27, 2025, Plaintiff notified the ALJ of the Settlement and requested dismissal.[11] On August 28, 2025, the ALJ issued an order dismissing the case, informing the parties that they may request DAB review of the dismissal within 60 days of the ALJ's Order for Dismissal.[12] Neither party sought DAB review of the dismissal.[13]

On March 13, 2026, Plaintiff filed its Complaint challenging the Determination on various grounds.[14] Counts I–III allege Defendants' actions violated the Administrative Procedure Act ("APA")[15] because they were (1) arbitrary and capricious;[16] (2) not in accordance with the law;[17] and (3) procedurally flawed.[18] Count IV alleges that Defendants violated the Due

---

[9] Doc. 14-5 ¶ I.C.

[10] Doc. 14-5 at 2–3.

[11] Doc. 14-6.

[12] Doc. 14-7.

[13] Doc. 15 at 3 ("That window closed in late October 2025 and has not been reopened.").

[14] Doc. 1.

[15] 5 U.S.C. § 706(2)(A)–(F).

[16] Plaintiff claims that Defendants' decision was arbitrary and capricious because (1) "CMS failed to properly consider all six factors required by 42 C.F.R. Section 424.535(a)(8)(ii)"; (2) "CMS relied on claim denials that were themselves erroneous and unsupported by a proper review of the documentation"; (3) "CMS failed to follow the procedures established in the Medicare Program Integrity Manual, including the minimum sample size requirements"; and (4) "CMS failed to follow the procedures established in the Medicare Program Integrity Manual and CGS's own stated review practices, which specify that Targeted Probe and Educate reviews consist of prepayment samples of twenty to forty claims per round." Doc. 1 ¶¶ 78–83.

[17] Plaintiff claims Defendants' decision was not in accordance with law because "CMS failed to properly apply the requirements of 42 C.F.R. Section 424.535(a)(8)(ii)," and "the underlying claim denials were erroneous and did not support a finding that Plaintiff submitted claims that failed to meet Medicare requirements." *Id.* ¶¶ 88–89.

[18] Lastly, Plaintiff claims that Defendants failed to observe procedure required by law when making the decision because (1) "Defendants failed to follow the procedures established in the Medicare Program Integrity Manual for conducting reviews"; (2) "Defendants failed to use a sample size of at least 20 claims in the first review as established by CGS's own stated procedures for Targeted Probe and Educate reviews"; (3) "Defendants failed to issue separate decisions for the probe audit and the extrapolated audit, depriving Plaintiff of proper notice and the ability to appeal each decision separately"; and (4) "Defendants failed to provide Plaintiff with the results of the third audit prior to issuing the revocation notice." *Id.* ¶¶ 94–97.

Process Clause of the Fifth Amendment by failing to provide Plaintiff with adequate notice and a meaningful opportunity to be heard before instituting the Determination.[19]

On these grounds, Plaintiff sought an order declaring that the Determination violated the APA and the Due Process Clause of the Fifth Amendment and setting aside and vacating the Determination.[20] Defendants moved to dismiss the case for lack of subject matter jurisdiction and failure to state a claim.[21]

## II. Standard

Defendants move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court will begin by outlining the applicable standards for each motion in turn.

Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[22] When the United States, one of its agencies, or its employees named in their official capacities are named as defendants, a waiver of sovereign immunity is required before the court can assume subject matter jurisdiction.[23] A court lacking jurisdiction must dismiss the case pursuant to Rule 12(b)(1), regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[24]

The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[25] "Thus, [the] plaintiff bears the burden of showing why the case

[19] *Id.* at 17–19.

[20] *Id.* at 20–21.

[21] Doc. 14.

[22] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

[23] *See United States v. Sherwood*, 312 U.S. 584, 586 (1941); *High Country Citizens All. v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006).

[24] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995); Fed. R. Civ. P. 12(h)(3).

[25] *Montoya*, 296 F.3d at 955.

should not be dismissed."[26] Mere conclusory allegations of jurisdiction are not enough.[27] And "a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[28]

To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[29] and must include "enough facts to state a claim for relief that is plausible on its face."[30] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[31] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[32] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[33] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[34]

"When a defendant seeks dismissal under Rule[s] 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the

---

[26] *Harms v. IRS*, 146 F. Supp. 2d 1128, 1130 (D. Kan. 2001).

[27] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[28] *Id.* at 1003 (citation omitted).

[29] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[30] *Id*. at 570.

[31] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[33] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[34] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

court lacked subject matter jurisdiction."[35] The Court's discussion will therefore begin with Defendants' motion to dismiss for lack of jurisdiction.

## III. Discussion

The Medicare Act incorporates two key provisions of the Social Security Act, 42 U.S.C. §§ 405(g)–(h),[36] which provide a strict administrative exhaustion requirement as a prerequisite to judicial review and forecloses alternative routes of review.[37] Thus, subject to narrow exceptions, a party seeking judicial review of the Secretary's decisions under the Medicare Act must first demonstrate that they have exhausted the administrative review process.[38] "If a party fails to do so, a federal district court lacks statutory authorization to hear the case."[39] Without statutory authorization, the Court lacks subject matter jurisdiction because the Supreme Court has

[35] *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996).

[36] *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of [the Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . The findings of [the Secretary] as to any fact, if supported by substantial evidence, shall be conclusive . . . . The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions."); *see also* 42 U.S.C. § 405(h) ("The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.").

[37] *See Blue Valley Hosp., Inc. v. Azar*, 322 F. Supp. 3d 1149, 1160 (D. Kan. 2018) (summarizing the Medicare Act's incorporation of the Social Security Act's administrative exhaustion requirement); *see also* 42 U.S.C. § 1395cc(h)(1)(A) ("[A]n institution or agency dissatisfied with a determination by the Secretary that it is not a provider of services or with a determination described in subsection (b)(2) shall be entitled . . . to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of [the Social Security Act]."); 42 U.S.C. § 1395ii (providing that the provisions of § 405(h) "shall also apply with respect to this subchapter [Medicare] to the same extent as they are applicable with respect to subchapter 11 [Social Security].").

[38] *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) ("§ 405(h) . . . demands the 'channeling' of virtually all legal attacks through the agency, it assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case by case.").

[39] *Minimally Invasive Surgery Hosp., Inc. v. United Healthcare Servs. Inc.*, No. 24-2520, 2025 WL 358766, at *2 (D. Kan. Jan. 31, 2025).

recognized that the Medicare statute provides "the sole avenue of judicial review" for any matter "arising under" the Medicare Act.[40]

Plaintiff concedes that Counts I–III should be dismissed based on its failure to exhaust administrative review.[41] The Court agrees because the Settlement ended Plaintiff's attempt to seek DAB review of the Determination. The Court therefore grants Defendants' motion to dismiss Counts I–III. Plaintiff also concedes that CGS was improperly named as a defendant because it is a private actor that is neither subject to the APA nor the Fifth Amendment's Due Process Clause.[42] The Court again agrees because CGS was only acting as the Medicare Administrative Contractor for CMS.[43] Thus, the Court also dismisses Plaintiff's claims against CGS.

Having addressed Plaintiff's concessions, the Court turns next to the last jurisdictional issue as it pertains to the remaining Defendants. Plaintiff argues that Count IV should not be dismissed because jurisdiction lies on grounds recognized in *Mathews v. Eldridge*.[44] While the Secretary "[o]rdinarily . . . has discretion to decide when to waive the exhaustion requirement," the Supreme Court recognized in *Eldridge* that "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate."[45] Thus, the Supreme Court "authoriz[ed] courts to reverse the Secretary's

---

[40] *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984).

[41] Doc. 15 at 5.

[42] *Id.* at 6–7.

[43] Doc. 1 ¶ 3.

[44] Doc. 15 at 8–11 (citing 424 U.S. 319 (1976)).

[45] *Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (quoting *Eldridge*, 424 U.S. at 330).

determination that a plaintiff has not yet obtained a final administrative decision for the purposes of satisfying § 405's exhaustion requirements under limited circumstances."[46]

Circumstances justifying waiver of § 405's exhaustion requirement exist where "(1) the plaintiff asserts a colorable constitutional claim that is collateral to the substantive issues of the administrative proceedings, (2) exhaustion would result in irreparable harm, and (3) exhaustion would be futile."[47] "The plaintiff bears the burden of establishing these elements."[48] Because the Court finds that Plaintiff cannot meet the first element for the reasons explained below, the Court need not address the remaining two elements.[49]

Under the first element, Plaintiff's constitutional claim must be collateral *and* colorable.[50] Collateral claims "must not require the court to immerse itself in the substance of the underlying Medicare claim or demand a factual determination as to the application of the Medicare Act."[51]

---

[46] *Blue Valley Hosp., Inc. v. Azar*, 919 F. 3d 1278, 1284 (10th Cir. 2019) (citing *Eldridge*, 424 U.S. at 330–31). As this Court has explained, "*Eldridge* did not create an exception to the channeling requirements in § 405(g) but instead found that the 'final decision' requirement would be deemed satisfied" under specific circumstances. *Blue Valley Hosp., Inc. v. Azar*, 322 F. Supp. 3d 1149, 1162 (D. Kan. 2018), *aff'd*, *Blue Valley Hosp.*, 919 F.3d 1278.

[47] *Blue Valley Hosp.*, 919 F.3d at 1284–85 (quoting *Harline v. Drug Enf't Admin.*, 148 F.3d 1199, 1203 (10th Cir. 1998)).

[48] *Harline*, 148 F.3d at 1203 (citing *Koerpel v. Heckler*, 797 F.2d 858, 863 (10th Cir. 1986)).

[49] Before the jurisdictional avenue recognized in *Eldridge* becomes available, § 405(g) also contains "the nonwaivable and nonexcuseable [prerequisite] requirement that an individual present a claim to the agency before raising it in court." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (2000). The Court finds that Plaintiff met this requirement when it requested reconsideration from Defendants.

[50] The parties misapply the "colorable" requirement from *Eldridge*. *See Senior Life York, Inc. v. Azar*, 418 F. Supp. 3d 62, 74 n.4 (M.D. Pa. 2019) (finding that the circuit courts of appeals have construed the *Eldridge* "colorable" requirement differently). When applying the first element, the parties only dispute whether Plaintiff's claim is collateral without further analyzing whether the claim is also colorable. The Tenth Circuit, consistent with other circuit courts of appeals, construes the colorable requirement from *Eldridge* as requiring courts to partially assess the merits of the constitutional claim rather than the extent of the plaintiff's alleged injuries. *Compare Blue Valley Hosp.*, 919 F.3d at 1286–87; *Cathedral Rock of N. College Hill, Inc. v. Shalala*, 223 F.3d 354, 364 (6th Cir. 2000); *and Northlake Cmty. Hosp. v. United States*, 654 F.2d 1234, 1242 (7th Cir. 1981) *with Kreschollek v. S. Stevedoring Co.*, 78 F.3d 868, 875 (3d Cir. 1996) *and Global Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 919 (9th Cir. 2022).

[51] *Blue Valley Hosp.*, 919 F.3d at 1285 (quoting *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 501 (5th Cir. 2018)); *see also Family Rehab*, 886 F.3d at 503 ("If the court must examine the merits of the underlying dispute,

"The claim 'must seek some form of relief that would be unavailable through the administrative process,' rather than the 'substantive, permanent relief that the plaintiff seeks . . . through the agency appeals process.'"[52]

For example, in *Eldridge*, the Supreme Court held that a plaintiff's constitutional claim demanding a pre-termination hearing was collateral; the claim only involved an analysis of Supreme Court jurisprudence on the Due Process Clause, which involved completely separate issues from the plaintiff's challenge to the Secretary's decision to terminate benefits.[53]

In contrast, in *Blue Valley Hospital, Inc. v. Azar*, the Tenth Circuit held that a provider's procedural due process claim was not collateral because the claim was only based on the provider's disagreement with CMS's use of improperly promulgated administrative guidance, rather than "the constitutionality of the Medicare Act's termination procedures for healthcare providers."[54] The court emphasized that the provider's due process claim contained arguments that were "identical to the arguments [the provider] raise[d] in its administrative appeal to reverse the termination decision."[55]

Plaintiff argues that Count IV is collateral because it only challenges the adequacy of process Defendants provided before the Determination, including: "[(1)] whether Prairie View received the audit results on which the revocation rested before the revocation issued, [(2)] whether the two underlying audits should have generated separate, independently appealable

delve into the statute and regulations, or make independent judgments as to plaintiffs' eligibility under a statute, the claim is not collateral.").

[52] *Blue Valley Hosp.*, 919 F.3d at 1285 (quoting *Family Rehab*, 886 F.3d at 501–02).

[53] *Mathews v. Eldridge*, 424 U.S. 319, 330–31 (1976).

[54] *Blue Valley Hosp.*, 919 F.3d at 1285.

[55] *Id.*

decisions, and [(3)] whether Prairie View had a meaningful opportunity to respond before its enrollment was terminated."[56] The Court disagrees.

Count IV poses questions that are not entirely collateral to the substantive issues presented in Counts I–III. Like in *Blue Valley Hospital* where the provider's constitutional claims were identical to arguments the provider raised in its administrative appeal, Count IV includes arguments which—despite being refurbished with constitutional language—identically mirror Plaintiff's procedural challenges under the APA.[57] Count IV also seeks the same substantive, permanent relief Plaintiff sought through the administrative process.[58] And, unlike the collateral claim from *Eldridge* that only required an analysis of Supreme Court jurisprudence, Plaintiff never directly contends that these three additional processes are generally due to all Medicare providers under the Constitution.[59]

But even if Count IV were collateral, Plaintiff has still failed to demonstrate that its claim is colorable. "A constitutional claim in this context is not colorable if it is immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous."[60] While the Tenth Circuit has defined "colorable" generously,[61] jurisdiction will be denied "if the claims are 'foreclosed by prior decisions.'"[62]

---

[56] Doc. 15 at 8.

[57] *See* Doc. 1 ¶¶ 96, 97.

[58] *See id.* ¶ 106.

[59] *See Blue Valley Hosp., Inc. v. Azar*, 919 F.3d 1278, 1285 n.5 (10th Cir. 2019) (finding that a procedural due process claim was *not* collateral because it did not "dispute the sufficiency of the process generally afforded to Medicare providers prior to termination").

[60] *Id.* at 1286 (quoting *Harline v. Drug Enf't Admin.*, 148 F.3d 1199, 1203 (10th Cir. 1998)).

[61] *Id.* (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1240 (10th Cir. 2001)).

[62] *Id.* (quoting *Harline*, 148 F.3d at 1203).

The colorability inquiry here centers on what process was due before Defendants revoked Plaintiff's rights. Plaintiff must show that the further pre-deprivation safeguards it requests are justified in light of the "elaborate character of the administrative procedures provided by the Secretary."[63] This showing must be made through application of the balancing factors set forth in *Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[64]

When applying the *Eldridge* factors, prior decisions from this circuit have foreclosed the argument that Medicare providers are entitled to pre-termination hearings.[65] And this Court has explained that Medicare providers' private interest in extensive pre-termination process "is not particularly compelling because a Medicare provider is not the intended beneficiary of the program; its 'financial need to be subsidized for the care of its medical patients is only incidental to the purpose and design of the Medicare program.'"[66] Further, "the Government's interest in expediting the termination process . . . is very strong. The statutory and regulatory scheme at

---

[63] *Mathews v. Eldridge*, 424 U.S. 319, 339–40 (1976).

[64] *Id.* at 333; *THI of Kan. at Highland Park, LLC v. Sebelius*, No. 13–2360, 2013 WL 4047570, at *8 (D. Kan. Aug. 9, 2013); *Autumn Health Care of Zanesville, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 959 F. Supp. 2d 1044, 1051–53 (S.D. Ohio 2013) (citing *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 361–65 (6th Cir. 2000)).

[65] *See*, *e.g.*, *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th Cir. 1981) ("There is . . . no . . . constitutional requirement that a hearing be conducted prior to the cessation of benefits."); *Blue Valley Hosp.*, 919 F.3d at 1286 ("Our decision in *Geriatrics*, 640 F.2d at 262, forecloses [the provider]'s constitutional claim requesting a hearing before an ALJ prior to the termination of its Medicare provider agreement."); *THI of Kan.*, 2013 WL 4047570 at *8 ("This Court follows the analysis of the Tenth Circuit and others in concluding that the *Mathews v. Eldridge* factors do not require a pre-termination hearing for a Medicare provider.").

[66] *Blue Valley Hosp., Inc. v. Azar*, 322 F. Supp. 3d 1149, 1166–67 (D. Kan. 2018), *aff'd*, 919 F.3d 1278.

issue is designed to protect 'the safety and care of elderly and disabled Medicare patients' and to minimize 'the expenses of administering the Medicare program.'"[67]

Plaintiff neither applies the *Eldridge* factors to this case nor confronts the prior decisions from this circuit which resist expanding the pre-termination process due to Medicare providers. Instead, Plaintiff relies on mere allegations that it should have been entitled to these processes without providing any reasoning. "If the mere allegation of a denial of due process could suffice to establish subject-matter jurisdiction, then every act of an agency would be immediately judicially reviewable, undermining a statutory scheme which limits judicial review to further the above policies."[68] Thus, to avoid circumnavigating § 405's exhaustion requirement, the Court finds that Count IV also does not state a colorable constitutional claim.

The Court therefore grants Defendants' motion to dismiss for lack of jurisdiction and dismisses the case. The Court also denies as moot Defendants' motion to dismiss for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Motion to Dismiss (Doc. 14) is **granted** for lack of subject matter jurisdiction. The Clerk is directed to enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: September 16, 2026

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[67] *THI of Kan.*, 2013 WL 4047570, at *9 (quoting *Cathedral Rock*, 223 F.3d at 365).

[68] *Harline v. Drug Enf't Admin.*, 148 F.3d 1199, 1203 (10th Cir. 1998).